IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR NO. 07-00268-01 JMS |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING THE |
| | ) | GOVERNMENT'S APPEAL OF THE |
| vs. | ) | MAGISTRATE JUDGE'S ORDER |
| | ) | REGARDING CONFLICT OF |
| NELSON GAITAN-AYALA, (01) | ) | INTEREST OF ATTORNEY MYLES |
| | ) | BREINER |
| Defendant. | ) | |
| _____ | ) | |

**ORDER GRANTING THE GOVERNMENT'S APPEAL OF THE MAGISTRATE JUDGE'S ORDER REGARDING CONFLICT OF INTEREST OF ATTORNEY MYLES BREINER**

**I. INTRODUCTION**

On January 29, 2008, the government filed a motion to determine whether a conflict of interest arose from Attorney Myles S. Breiner's ("Breiner") representation of defendant Nelson Gaitan-Ayala ("Gaitan-Ayala"), in light of Breiner's prior representation of two cooperating witnesses who are expected to testify as government witnesses at Gaitan-Ayala's trial.  After a hearing on this motion, Magistrate Judge Leslie E. Kobayashi entered an Order finding that Breiner had no actual or potential conflict.  On February 11, 2008, the government filed an Appeal of Magistrate Judge's Order Regarding Conflict of Interest of Attorney Myles Breiner ("Appeal").  Based on the following, the government's

Appeal is GRANTED, and Breiner is disqualified from representing Gaitan-Ayala.

## II.  BACKGROUND

Gaitan-Ayala, along with several co-defendants, is charged with: 1) one count of conspiring to possess with intent to distribute and distribute 500 grams or more of a substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 846; 2) two counts of distributing 50 grams or more of methamphetamine, its salts, isomers and salts of its isomers in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); and 3) two counts of using a communication facility in causing and facilitating the commission of a conspiracy to possess with intent to distribute and distribute methamphetamine, its salts, isomers and salts of its isomers in violation of 21 U.S.C. § 843(b).

According to the government, Gaitan-Ayala was the leader of a drug trafficking organization ("DTO") which transported methamphetamine via couriers and mail from Nevada to Hawaii.  Breiner entered his appearance as privately retained counsel for Gaitan-Ayala on December 28, 2007.  On January 29, 2008, the government filed a Motion for Hearing on Conflict of Interest of Myles Breiner ("January 29, 2008 Motion"), seeking resolution of any potential conflict of interest as the result of Breiner's former representations of Jason Ciufo and Cory Kauwili, two of the government's prospective witnesses against Gaitan-

Ayala.[1]

Breiner represented Jason Ciufo arising from Ciufo's June 3, 2004 arrest at the Honolulu International Airport while body-carrying approximately 673 grams of methamphetamine. Ciufo pled guilty in May 2006, and was sentenced to 68 months imprisonment after receiving a downward departure pursuant to United States Sentencing Guidelines § 5K1.1 for his substantial assistance in the investigation or prosecution of another individual.[2]

On February 7, 2008, Magistrate Judge Kobayashi held a hearing on the January 29, 2008 Motion. At that hearing, Assistant U.S. Attorney Susan Cushman ("AUSA Cushman") informed the court that Ciufo is scheduled to testify at Gaitan-Ayala's trial on behalf of the government in exchange for the possibility of a reduced sentence pursuant to Federal Rule of Criminal Procedure 35(b).[3] Tr. 2/7/08 at 3. AUSA Cushman proffered that the methamphetamine that Ciufo was

---

[1] Given the court's conclusion that Breiner must be disqualified from representing Gaitan-Ayala based on Breiner's former representation of Ciufo, the court does not address Breiner's former representation of Kauwili.

[2] Ciufo was traveling with Arte Perreira on a flight originating in Las Vegas. Perreira was also arrested after he was found to be body-carrying approximately 672 grams of methamphetamine. Ciufo's guideline range was determined based on the quantity of methamphetamine carried by both Ciufo and Perreira, approximately 1345 grams.

[3] AUSA Cushman later noted at the February 20, 2008 hearing before this court that she traveled to Sheridan, Oregon where Ciufo is currently incarcerated to arrange for Ciufo's cooperation and testimony against Gaitan-Ayala and his co-conspirators.

transporting from Las Vegas to Honolulu on the day of his arrest "was from the Ayala drug trafficking organization. Mr. Ciufo, when this case goes to trial will be called as a witness to testify about the -- the conspiracy. He's a witness to the conspiracy." *Id.*

Breiner responded that Ciufo did not know Gaitan-Ayala, and if called to testify Ciufo would not directly implicate Gaitan-Ayala in any conspiracy. In addition, Breiner represented to the court that any privileged communications imparted by Ciufo to him were also disclosed to the government during his debriefings. *Id.* at 8.

Magistrate Judge Kobayashi questioned Gaitan-Ayala regarding any actual or potential conflicts of interest based on Breiner's former representation of Ciufo and Kauwili. Gaitan-Ayala affirmed his desire to have Breiner continue as his counsel and waived his right to conflict-free representation. *Id.* at 14-21. Magistrate Judge Kobayashi entered an Order finding that the government failed to demonstrate an actual or serious potential for conflict and that it was not necessary to conduct a colloquy with Ciufo. The government filed its appeal of the Order on February 11, 2008, and Gaitan-Ayala filed a response on February 19, 2008. This court heard oral arguments on February 20, 2008.

During the February 20, 2008 hearing, AUSA Cushman further

proffered that Ciufo's testimony, although not directly implicating Gaitan-Ayala, would prove that the methamphetamine that Ciufo possessed at the time of his arrest is attributable to Gaitan-Ayala as a member of the conspiracy.  *See* United States Sentencing Guidelines § 1B1.3.  Specifically, the government claims that at the time of his arrest Ciufo was involved in a drug transaction with his girlfriend, Roxanne Bates, and that Gaitan-Ayala was ultimately responsible for the shipment of these drugs.

Breiner confirmed during the February 20, 2008 hearing that he was actively seeking a Rule 35(b) motion on behalf of Ciufo based on the charges brought against Roxanne Bates.  In fact, Breiner discussed Ciufo's cooperation with the United States Attorney's Office in late January 2008, one month *after* he entered an appearance for Gaitan-Ayala.  *See* Tr. 2/7/08 at 6-7.

### III.  STANDARD OF REVIEW

A magistrate judge's order finding that no conflict of interest exists is nondispositive.  *See, e.g., United States v. Bennett*, 2006 WL 2793170, at *2 (D. Haw. Sept. 27, 2006) (citations omitted).  Pursuant to 28 U.S.C. § 636(b)(1)(A), this court may reconsider nondispositive pretrial matters "where it has been shown that the magistrate's order is clearly erroneous or contrary to law."

5

# IV. ANALYSIS

## A. The Right to Conflict-Free Counsel

The Sixth Amendment provides that a criminal defendant shall have the right to the assistance of counsel for his defense. One element of this right is the accused's right to select and be represented by the attorney of his choice. *United States v. Gonzalez-Lopez*, 126 S. Ct. 2557, 2561 (2006). Nevertheless, this right is not absolute as the "essential aim" of the Sixth Amendment is "to guarantee an effective advocate for each criminal defendant, rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988). The Sixth Amendment also guarantees a criminal defendant the right to assistance of counsel unburdened by conflicts of interest. *United States v. Elliot*, 463 F.3d 858, 867 (9th Cir. 2006) ("Few aspects of our criminal justice system are more vital to the assurance of fairness than the right to be defended by counsel, and this means counsel not burdened by a conflict of interest." (*citing United States v. Henke*, 222 F.3d 633, 638 (9th Cir. 2000) (per curiam))); *Bonin v. California*, 494 U.S. 1039, 1044 (1990) (Marshall, J., dissenting) ("The right to counsel's undivided loyalty is a critical component of the right to assistance of counsel; when counsel is burdened by a conflict of interest, he deprives his client of his Sixth Amendment right as

surely as if he failed to appear at trial."). Thus, while there is a presumption in favor of a defendant's counsel of choice, *Gonzalez-Lopez*, 126 S. Ct. at 2561, "that presumption may be overcome not only by a demonstration of actual conflict of interest but by a showing of a serious potential for conflict." *Wheat*, 486 U.S. at 164. Determining whether a conflict exists "must be left primarily to the informed judgment of the trial court." *Id*.

An attorney's former representation of a government witness can create an actual or serious potential conflict that warrants disqualification. *See Moss v. United States*, 323 F.3d 445, 460 (6th Cir. 2003) ("[T]he most common example of an actual conflict of interest arising from successive representation occurs when an attorney's former client serves as a government witness against the attorney's current client at trial."). In such cases of successive representation, "conflicts of interest may arise if the cases are substantially related or if the attorney reveals privileged communications of the former client or otherwise divides his loyalties." *United States v. Shwayder*, 312 F.3d 1109, 1118 (9th Cir. 2002) (*quoting Fitzpatrick v. McCormick*, 869 F.2d 1247, 1252 (9th Cir. 1989) (internal quotation marks omitted)). Potential dangers in a case involving successive representation include: (1) the attorney may be tempted to use privileged information learned during the prior representation to the disadvantage

of the former client, or (2) the attorney may fail to conduct a rigorous cross-examination of the former client for fear of revealing or misusing confidential information learned during the prior representation to the disadvantage of the current client.  *See Sanders v. Ratelle*, 21 F.3d 1446, 1453 (9th Cir. 1994).

       The court may allow an attorney to proceed despite a conflict "if the defendant makes a voluntary, knowing, and intelligent waiver." *United States v. Martinez*, 143 F.3d 1266, 1269 (9th Cir. 1998) (internal quotation marks and citation omitted).  Nevertheless, even in cases where a defendant waives an actual or potential conflict, district courts have "substantial latitude in refusing waivers of conflicts of interest" in favor of disqualification in cases "where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat*, 486 U.S. at 163.[4]  The Supreme Court has recognized the difficulty inherent in these situations:

> Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships

---

[4] The Supreme Court's recent holding in *United States v. Gonzalez-Lopez*, 126 S. Ct. 2557 (2006), that an erroneous deprivation of a defendant's counsel of choice constitutes a structural error, does not impair a district court's ability to disqualify a conflicted attorney over the objections of the defendant.  *See id.* at 2565 (stating that "[n]othing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice").

>between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials.

*Id.* at 162-63.

In ascertaining the existence of an actual or serious potential conflict, the court may look in part to the relevant body of professional rules. *See In re Grand Jury Investigation*, 447 F. Supp. 2d 453, 458 (E.D. Pa. 2006) (finding that the Rules of Professional Conduct provide a useful guide against which to measure the conduct of lawyers subject to a disqualification motion). The Local Rules for the District of Hawaii require attorneys practicing in the district to comply with the Hawaii Rules of Professional Conduct ("HRPC"). *See* Local Rule 83.3.

>HRPC 1.7 provides that:
>
>(a)  A lawyer shall not represent a client if the representation of that client will be directly adverse to another client unless:
>   (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>   (2) each client consents after consultation.
>
>(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests unless:
>   (1)  the lawyer reasonably believes the representation will

9

>    not be adversely affected; and
> (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

Nonetheless, "when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation under the circumstances. When more than one client is involved, the question of conflict must be resolved as to each client." HRPC 1.7 cmt. ¶ 5.

With these principles in mind, the court next turns to whether a conflict exists in this case.

## B.    Breiner Is Disqualified from Representing Gaitan-Ayala

Applying the clearly erroneous standard of review, the court finds that Breiner's representation of Ciufo creates a serious potential conflict of interest warranting his disqualification.[5]

---

[5] Breiner appears to represent Ciufo to this day. Since becoming aware of Roxanne Bates' arrest, Breiner has actively represented Ciufo's interests by seeking Rule 35 consideration from the U.S. Attorney's Office, as late as January 2008. "When I run into [AUSA] Bev [Sameshima] I ask her about it. I asked Special Agent Weiss about it." Tr. 2/7/08 at 11-12. Breiner also stated that he has been updating Ciufo's grandfather about the status of Ciufo's case. Whether viewed as successive or simultaneous representation, the court reaches the same conclusion -- the representation of Ciufo creates a serious potential conflict of interest requiring disqualification.

Breiner's divided loyalties between Gaitan-Ayala and Ciufo create an ethical impasse -- the adherence to his duties to one client will likely necessitate the abandonment of his duties to the other. *United States v. Lanoue*, 137 F.3d 656, 663-64 (1st Cir. 1998) (upholding disqualification prior to trial where defense counsel formerly represented potential government witness). Ciufo is expected to testify to facts that, if true, would prove the existence of a conspiracy. Although Ciufo will not offer evidence of Gaitan-Ayala's direct involvement in the conspiracy, the government has proffered that others will provide the connection between Gaitan-Ayala and the conspiracy. Should the government succeed in this endeavor, the methamphetamine Ciufo body-carried on June 3, 2004 may be attributable to Gaitan-Ayala if convicted. *See* United States Sentencing Guideline § 1B1.3.

Given these stakes, Breiner's duty of undivided loyalty to Gaitan-Ayala may lead him to discredit Ciufo, jeopardizing Ciufo's chances of obtaining a reduced sentence. On the other hand, Breiner's duty of undivided loyalty to Ciufo may lead him to foregoing a vigorous cross-examination, leaving Ciufo's assertions largely uncontested (but increasing the likelihood of receiving Rule 35 consideration). *See United States v. Moscony*, 927 F.2d 742, 750 (3d Cir. 1991) ("[A]n attorney who cross-examines former clients inherently encounters divided

loyalties." (citations omitted)).  Breiner's conflicting duties create a serious potential conflict of interest.[6]

In addition to constitutional considerations, the ethical standards embodied in the HRPC weigh against Breiner's continued representation of Gaitan-Ayala in this case.  Based on his ethical duties to Ciufo, Breiner may severely limit or restrict the scope of his cross-examination, or may refrain from pursuing defense strategies or tactics otherwise available to non-conflicted counsel.  These concerns are further amplified by the fact that Breiner's continuing duty of confidentiality prevents the disclosure of not only confidential communications, but also "all information relating to the representation, whatever its source."  HRPC 1.6(a); *id.* cmt. ¶ 5.  Under these circumstances, a "disinterested" attorney would not conclude that Gaitan-Ayala should agree to Breiner's representation.  HRPC 1.7 cmt. ¶ 5.[7]  Finally, Gaitan-Ayala's waiver of any conflict of interest does not resolve the issue.  This court has "an independent

---

[6] If the court affirmed Magistrate Judge Kobayashi's Order, Gaitan-Ayala could later file an ineffective assistance of counsel claim, relying on the conflict as the basis for that claim.  *See Wheat v. United States*, 486 U.S. 153, 161 (1988) (noting that the courts of appeals have shown a willingness "to entertain ineffective-assistance claims by defendants who have specifically waived the right to conflict-free counsel").

[7] Breiner also risks violating HRPC 1.9 because his former representation of Ciufo involved matters "substantially related" to Gaitan-Ayala's case, and the interests of his former and current clients are "materially adverse."  HRPC 1.9(a); *see also United States v. Shwayder*, 312 F.3d 1109, 1118 (9th Cir. 2002).


interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160.

Applying the clearly erroneous standard of review, the court concludes that Breiner has a serious potential conflict of interest in his representation of Gaitan-Ayala that substantially compromises his effectiveness and threatens the integrity of the adversarial process. Further, the court rejects Gaitan-Ayala's waiver, finding that Breiner's disqualification is required under the Sixth Amendment.

## V. **CONCLUSION**

The government has demonstrated a serious potential conflict that overcomes the presumption in favor of Gaitan-Ayala's counsel of choice. The

///

///

///

///

///

///

government's Appeal is GRANTED, and Breiner is disqualified from representing Gaitan-Ayala.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 17, 2008.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*United States v. Gaitan-Ayala* Cr. No. 07-00268-01 JMS, Order Granting the Government's Appeal of the Magistrate Judge's Order Regarding Conflict of Interest of Attorney Myles Breiner